UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DIGNITY HEALTH, ET. AL.,<br><br>　　　　　Defendants. | Case No.  1:20-cv-1778-NONE-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS UNDER 28 U.S.C. § 1915(g) OR DUE TO SUFFICIENT FUNDS IN INMATE ACCOUNT[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  9) |

　　　Plaintiff Allen Hammler, a prisoner incarcerated at California State Prison, Corcoran, initiated this action by filing a *pro se* prisoner civil rights complaint under 42 U.S.C. § 1983 on December 17, 2020.  (Doc. No. 1).  Plaintiff did not accompany the filing of his Complaint with a motion to proceed *in forma pauperis* ("IFP"), or the requisite filing fee.  On June 17, 2021 the undersigned issued an order directing Plaintiff to pay the filing fee or file an IFP motion within twenty-one days.  (Doc. No. 3).  After being granted an enlargement of time to comply with the Court's June 17 order, Plaintiff filed a motion to proceed *in forma pauperis*.[2]  (Doc. Nos. 7, 9).

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Eastern District of California Local Rule 302 (E.D. Cal. 2019).

[2] During the time between the order granting Plaintiff's motion for an enlargement of time and his filing of an IFP motion, the Court issued Findings and Recommendations which it later rescinded due to Plaintiff

1   For the reasons discussed below, the undersigned recommends the district court deny Plaintiff's

2   IFP motion under 28 U.S.C. § 1915(g) because Plaintiff has had at least three dismissals that

3   constitute strikes and he has not established he meets the imminent danger exception.  Further,

4   Plaintiff's IFP motion reveals as of August 2021, he had over $800.00 in his prison account.  (*See*

5   *Id*. at 1; *see also* Doc. No. 12).  Thus, alternatively on this basis, Plaintiff's IFP motion should be

6   denied and he should be required to pay the full filing fee, if he wishes to proceed with this civil

7   action.

## I. BACKGROUND AND FACTS

9   Plaintiff is incarcerated at California State Prison-Corcoran.  The Complaint is fifty-one

10  pages in length, handwritten, and not on a complaint form.  (*See generally* Doc. No. 1).  The

11  Complaint names as Defendants: Dignity Health, Adventist Health, Ralph Diaz, Ken Clark, FNU

12  Gamboa, Wilmer Cervantes, FNU Xiong, R. Andrada, J. Delatorre, FNU Duncan, and Laura

13  Flores.  (*Id.* at 1).  Plaintiff sues all Defendants in their individual capacities except Defendant

14  Ralph Diaz, who is sued in both his official and individual capacities. (*Id.* at 6).   According to the

15  Complaint, Plaintiff identifies the following claims for relief: (1) First Amendment- Free Speech

16  (*id.* at 33); (2) First Amendment retaliation (*id.* at 33); (3) Eighth Amendment- Deliberate

17  Indifference (*id.*); (4) unconstitutional custom, policy, or pattern of conduct (*id.* at 35); (5)

18  negligence, including among other claims, negligent supervision, negligent training, negligence in

19  failing to preserve video footage, (*id.* at 38-42); (6) assault (*id.* at 43); (7) slander (*id.* at 44); (8)

20  publishing matter in breach of the peace (*id.* at 46); and (9) intentional infliction of emotional

21  distress (*id.* at 47).

22  The events giving rise to the first claim in the Complaint occurred on September 9, 2019

23  in the triage area of a medical facility.  (*Id*. at 7).  The Complaint describes in novel-like fashion

24  an incident where Plaintiff wanted to make a "citizen's arrest" of either medical staff or a

25  correctional guard.[3]  (*Id*. at 7-13).  Plaintiff explains that various correctional guards, specifically

---

filing an IFP motion.  (*See* Doc. Nos. 8, 11).  Because the undersigned rescinded these earlier Findings and
Recommendations, Plaintiff's objections directed at them are moot.  (Doc. No. 13).

[3] Later in the Complaint, Plaintiff appears to clarify that he wanted a citizen's arrest of correctional officers
Cervantes and Xiong in relation to an alleged excessive use of force incident that occurred in September

2

Defendant Duncan, reported to the medical department and encouraged Plaintiff to let medical do its job and deal with the other issues later. (*Id.* at 13). Plaintiff interpreted Duncan's statement to Plaintiff to constitutes a threat of bodily injury. (*Id.* at 14). Plaintiff alleges he was in fear that correctional officers Cervantes and Xiong would return, take over the escort, and assault or kill him. (*Id.* at 14-15). Plaintiff alleges he was moved from the triage area to a hallway, where he feared would be taken out of the view of the camera and assaulted. (*Id.* at 15). No assault took place, but while waiting in the hall, Plaintiff had interactions with other hospital staff and a security guard. Again, Plaintiff perceived the conversations with the security guard as threatening. After the guard told Plaintiff he could not make a citizens' arrest because he was a prisoner and instead would need to proceed through the inmate grievance process, Plaintiff told the guard he would be sued. (*Id.* at 16). In response the security guard smiled at Plaintiff "in condescending manner." (*Id.*). After the security guard left, Plaintiff alleges he had interactions with correctional officers Cana and Delatorre who advised Plaintiff to wait until he got back to the prison so he didn't get himself in any trouble. (*Id.* ta 17). Plaintiff took issue with Cana's advice opining "his words didn't match the aggressive tone of his voice." (*Id.*).

Plaintiff then recounts a separate and unrelated incident that occurred on March 10, 2020 wherein he acknowledges he had control of the "food port" by holding the shelf of his food port in his cell. (*Id.* at 20). A correctional official reported to his cell to speak with him in an effort to gain his compliance regarding the food port. (*Id.*). During the incident, the correctional guard used force to remove Plaintiff's hold on the food port door, causing Plaintiff's pinky fingers on both hands to bleed. (*Id.*). Plaintiff went to the medical department for treatment to no avail. (*Id.* at 21-22). The next day, following Plaintiff's psychiatric visit, a nurse advised Plaintiff to let the abrasions on his fingers "air out." (*Id.* at 22).

Next, Plaintiff recalls an incident in June 2020 when correctional officer Cervantes appeared at his cell door and was "quietly smirking slyly." (*Id.* at 23). Plaintiff alleges after he looked at Cervantes, Cervantes "walked away quickly." (*Id.*). Plaintiff alleges this incident

---

2019. (Doc. No. 1 at 29).

caused Plaintiff to be fearful, as he believed an attack was being plotted, so Plaintiff ran to the cell door and yelled "I'll see you in court!" (*Id.*). Plaintiff alleges Cervantes responded he would knock Plaintiff out in court. (*Id.*).

Plaintiff then relays a September 2020 incident in Kings County Superior Court where he was proceeding *pro se* and cross-examined Cervantes about the use of force incident. (*Id.* at 24). Plaintiff alleges after the court proceeding, he and Cervantes exchanged words. (*Id.*). Plaintiff says he told Cervantes that "he was going to jail." (*Id.*). Plaintiff perceived Cervantes response that he did not believe Plaintiff would make it that far in court to be taunting him and "capitalizing on prior threats" against Plaintiff. (*Id.* at 24).

Plaintiff then related an October 2020 incident with Cervantes wherein he alleges Cervantes intentionally broke away from where he was stationed to go to Plaintiff's cell to ask Plaintiff how he was doing. (*Id.* at 25). Plaintiff states fear gripped him when he heard Cervantes' voice. (*Id.*). In response, Plaintiff admits he gave Cervantes the middle finger and threatened him with bodily injury if he opened the cell door. (*Id.*). Plaintiff acknowledges this incident prompted safety signs to be posted noting that there are "safety issues" with Plaintiff and Cervantes. (*Id.* at 26-27).

Finally, Plaintiff complains that on December 9, 2020 Cervantes "went to Plaintiff's cell with evil intent to cause him emotional distress and place him in fear." (*Id.* at 27). In response, Plaintiff yelled at Cervantes, reminding him of the safety signs to which Cervantes encouraged Plaintiff to threaten him with physical harm again. (*Id.*). Plaintiff claims Cervantes returned later to his cell but did not contact him because psychologist Copeland was speaking with Plaintiff. (*Id.* at 27-28).

As relief, Plaintiff seeks monetary damages and injunctive relief. (*Id.* at 48).

## II. APPLICABLE THREE STRIKE LAW

The "Three Strikes Rule" states:

> In no event shall a prisoner bring a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in the United States that was dismissed on grounds that it was frivolous, malicious, or fails to state a claim upon which relief may

4

>be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Part of the Prison Litigation Reform Act, the Three Strikes Rule was enacted to help curb non-meritorious prisoner litigation. *See Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020) (citations omitted)). Under § 1915(g), prisoners who have repeatedly brought unsuccessful suits may be barred from bringing a civil action and paying the fee on a payment plan once they have had on prior occasions three or more cases dismissed as frivolous, malicious, or for failure to state a claim. *Id.*; *see also Andrews v. Cervantes*, 493 F.2d 1047, 1052 (9th Cir. 2007). Regardless of whether the dismissal was with or without prejudice, a dismissal for failure to state a claim counts as a strike under § 1915(g). *Lomax,* 140 S. Ct. at 1727.

To determine whether a dismissal counts as a strike, a reviewing court looks to the dismissing court's actions and the reasons underlying the dismissal. *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). For a dismissal to count as a strike, the dismissal had to be on a "prior occasion," meaning it occurred before plaintiff initiated the instant case. *See* § 1915(g). A dismissal counts as a strike when the dismissal of the action was for frivolity, maliciousness, or for failure to state a claim, or an appeal dismissed for the same reasons. *Lomax*, 140 S. Ct. at 1723 (citing Section 1915(g)); *see also Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048 (9th Cir. 2016) (reviewing dismissals that count as strikes); *Coleman v. Tollefson*, 135 S. Ct. 1759, 1761 (2015) (dismissal that is on appeal counts as a strike during the pendency of the appeal). When a district court disposes of an *in forma pauperis* complaint requiring the full filing fee, then such a complaint is "dismissed" for purposes of §1915(g). *Louis Butler O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). A dismissal for failure to state a claim relying on qualified immunity counts as a strike. Reberger v. Baker, 657 F. App'x 681, 683-84 (9th Cir. Aug. 9, 2016).

Although not exhaustive, dismissals that do not count as § 1915(g) strikes include: dismissals of habeas corpus petitions, unless the habeas was purposefully mislabeled to avoid the three strikes provision. *See generally El-Shaddai v. Zamora*, 833 F.3d 1036, 1046 (9th Cir. 2016) (dismissals of habeas cases do not count as strikes, noting exception). A denial or dismissal of

writs of mandamus petitions, the *Younger*[4] abstention doctrine, and *Heck v. Humphrey*[5] generally do not count as a strike, but in some instances *Heck* dismissals may count as a strike. *See Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d at 1055-58 (citations omitted) (recognizing some *Heck* dismissals may count as strikes but noting others do not; and reiterating abstention doctrine dismissals and writs of mandamus do not count as strikes). A dismissal of a claim based on sovereign immunity does not count as a strike. *Hoffman v. Pulido*, 928 F.3d 1147 (9th Cir. 2019). The Ninth Circuit also does not count cases dismissed for lack of jurisdiction as strikes. *Moore v. Maricopa Cty. Sheriff's Off.*, 657 F.3d 890, 894 (9th Cir. 2011). Finally, the Ninth Circuit has ruled that if one reason supporting a dismissal is not a reason enumerated under §1915A, then that reason "saves" the dismissal from counting as a strike. *Harris v. Harris*, 935 F.3d 670 (9th Cir. 2019).

Once prisoner-plaintiffs have accumulated three strikes, they may not proceed without paying the full filing fee, unless "the complaint makes a plausible allegation" that the prisoners "faced 'imminent danger of serious physical injury' at the time of filing." *Andrews v. Caervantes*, 493 F.3d 1047, 1051-52 (9th Cir. 2007) (addressing imminent danger exception for the first time in the Ninth Circuit). The court must construe the prisoner's "facial allegations" liberally to determine whether the allegations of physical injury are plausible. *Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015). However, assertions of imminent danger may be rejected as overly speculative, fanciful, or "conclusory or ridiculous." *Andrews*, 493 F.3d at 1057, fn. 11.

The foregoing law must be taken in the context of Congressional intent when enacting the Prison Litigation Reform Act, under which § 1915(g) falls. As the United States Supreme Court recently discussed in *Lomax*, the purpose of § 1915(g) was to curb the "flood of nonmeritorious claims," even if not abusive claims, but to allow the court a mechanism to recognize a "three striker," deny IFP on that basis, require payment of the full filing fee, which absent being paid, dismiss the case, and thereby permit time for consideration of suits more likely to succeed.

---

[4] *Younger v. Harris*, 401 U.S. 37 (1971).
[5] *Heck v. Humphrey*, 512 U.S. 477 (1994).

6

*Lomax*, 140 S.Ct. at 1726; *see also Bruce v. Samuels*, 577 U.S. 82, 85 (2016) (the PLRA was designated to filter out the bad claims filed by prisoners and facilitate consideration of the good, resulting in the payment of all future filing fees payable up front for those prisoner-plaintiffs deemed three-strikers).

### III. ANALYSIS

**A. Plaintiff Has Three or More Qualifying Strikes**

Plaintiff is identified as a "three-striker" on the national *Pro Se* Three Strike Database and a review of the Pacer Database reveals plaintiff has filed at least 80 civil actions or appeals in a court of the United States and has been deemed a three-striker under § 1915(g) prior to filing this lawsuit.[6] Although not exhaustive, for purposes of this report and recommendation, each of the following cases are properly deemed qualifying § 1915(g) strikes and each were entered before plaintiff commenced the instant action:

| Date of Order | Case Style | Disposition |
| --- | --- | --- |
| April 27, 2017 | *Hammler v. Director of CDCR*, Case No. 1:17-cv-00097(N.D. Cal.) | Dismissed for failure to state a claim. |
| December 10, 2018 | *Hammler v. Kernan*, Case No. 3:18-cv-00170-DMS-NLS (S.D. Cal.) | Dismissed for failure to state a claim and as frivolous. |
| May 24, 2019 | *Hammler v. Hough*, Case No. 3:18-cv-01319 (S.D. Cal.) | Dismissed for failure to state a claim and as frivolous. |
| March 25, 2020 | *Hammler v. Director CDCR*, Case No. 2:17-cv-1949-MCE-DB (E.D. Cal.) | Dismissed for failure to state a claim. |
| October 30, 2020 | *Hammler v. California*, Case No. 1:20-cv-630-DAD-GSA (E.D. Cal.) | Dismissed for failure to exhaust appearing on face of complaint. |

This Court and other courts have previously denied Plaintiff's IFP motions in other matters because of his three-striker status. *See, e.g*, Case Nos. 1:21-cv-00122-AWI-GSA (E.D. Cal. 2021); 2:21-cv-02065-JGB-SP (C.D. Cal. 2021). As evidenced by the above, Plaintiff has

---

[6] *See* http://156.128.26.105/LitigantCase.aspx?PersonID=6929 (National Pro Se Database); http://pacer.usci.uscourts.gov.

three or more qualifying strikes for purposes of § 1915(g).

### B. The Imminent Danger Exception Does Not Apply

The Complaint is peppered with references to "imminent danger" but it fails to contain plausible allegations that Plaintiff is in physical danger. Instead, Plaintiff's claimed threats or fears stem from his subjective interpretation of innocuous statements or gestures as threats. For example, he alleges a security guard at the hospital smiled at him in a condescending way. (*Supra* at 2-4). Aside from Plaintiff sustaining abrasions to his fingers from the food port incident, during which he admits to trying to keep the food port opened against correctional officers' directives, the Complaint is devoid of any physical harm, threatened or otherwise against him.

Many of the incidents described in the Complaint involve Plaintiff and correctional officer Cervantes exchanging words, but in each incident, Plaintiff acknowledges he retorted and in fact, one time gave Cervantes "the finger," resulting in the posting of a safety warning regarding Plaintiff and Cervantes. (*Id.*). Plaintiff claims Cervantes verbally taunts him, but allegations that are "[o]verly speculative and fanciful … do not plausibly show imminent danger." *Stine v. Fed. Bureau of Prisons,* 2015 WL 5255377, at *6 (E.D. Cal. Sept. 9, 2015). Vague "verbal threats of physical harm to [ ] health and safety" are insufficient "to demonstrate imminent danger of serious physical injury." *Cruz v. Pfeiffer*, 2021 WL 289408, at *2 (E.D. Cal. Jan. 28, 2021). "Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical." *Id*. Accordingly, without any factual basis these threats are too speculative and vague to demonstrate *imminent* danger.

Based on the foregoing, the undersigned finds no plausible allegations that Plaintiff is in imminent danger to avail himself of the exception to the three-strike bar. Based on the foregoing, the undersigned recommends Plainti

ff's IFP motion be denied under § 1915(g).

### C. Plaintiff has sufficient funds in his inmate account to pay

Alternatively, the undersigned recommends the district court deny Plaintiff's IFP motion because he has $825.00 in his inmate account. (*See* Doc. No. 12). Plaintiff acknowledges he

8

received $2600.00 in economic impact payments.  (*See* Doc. No. 8).

Proceeding IFP is "a matter of privilege and not right." *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984) (abrogated on different grounds).  A determination of indigency rests within the court's discretion. *California Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *reversed on other grounds*, 506 U.S. 194 (1993) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency.").  Although an IFP applicant need not be "destitute" a showing of indigence is required. *Adkins v. E.I. DuPont de Nemours & Co*., 335 U.S. 331, 339–40 (1948) (recognizing that an ability not to be able to pay for oneself and his dependents "the necessities of life" is sufficient).  Thus, a plaintiff must allege indigence "with some particularity, definiteness and certainty" before IFP can be granted. *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981).  Prisoners, unlike non-prisoner litigants, are in state custody "and accordingly have the 'essentials of life' provided by the government." *Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002).  The courts are inclined to reject ifp applications where an applicant can pay the filing fee with an acceptable sacrifice to other expenses. *See, e.g*. *Casey v. Haddad*, No. 1:21-CV-00855-SKO-PC, 2021 WL 2954009, at *1 (E.D. Cal. June 17, 2021), *report and recommendation adopted*, No. 1:21-CV-00855-DAD-SKO-PC, 2021 WL 2948808 (E.D. Cal. July 14, 2021) (finding prior balance of $1000, despite being decreased to $470 shortly before filing action sufficient to pay $402 filing fee); *Riddell v. Frye*, No. 1:21-CV-01065-SAB-PC, 2021 WL 3411876, at *1 (E.D. Cal. July 9, 2021), *report and recommendation adopted*, No. 1:21-CV-01065-DAD-SAB-PC, 2021 WL 3472209 (E.D. Cal. Aug. 6, 2021) (finding available balance of $1297.21 sufficient to pay $402 filing fee and denying ifp); *Allen v. Kelly*, 1995 WL 396860 at *2 (N.D. Cal. 1995) (despite plaintiff initially being permitted to proceed ifp, ordering plaintiff to pay $120 filing fee in full out of $900 settlement proceeds); *Ali v. Cuyler*, 547 F. Supp. 129, 130 (E.D. Pa. 1982) (denying ifp because "plaintiff possessed savings of $450 and the magistrate correctly determined that this amount was more than sufficient to allow the plaintiff to pay the filing fee in this action.").

Finally, lest Plaintiff argue that part or all the deposits emanate from Coronavirus Aid,

9

Relief and Economic Security Act ("CARES Act") and should be disregarded, the undersigned can conceive of no rational reason for not considering these deposits for purposes of determining Plaintiff's indigency. Nor is the undersigned aware of binding precedent that prevents "stimulus checks" from being included when making an indigency determinization. Indeed, to the contrary, other courts in this district have included the funds when making the determination. *See, e.g., Hammler v. Zydus Pharmacy*, 2021 WL 3048380, at *1-2 (E.D. Cal. July 20, 2021) (considering the plaintiff's "economic impact payments" when determining that the plaintiff was "financially able to pay the filing fee"); *Corral v. California Highway Patrol*, No. 1:21-CV-00822-DAD-JLT, 2021 WL 2268877, at *1 (E.D. Cal. June 3, 2021), *report and recommendation adopted*, No. 1:21-CV-00822-DAD-JLT, 2021 WL 3488309 (E.D. Cal. Aug. 9, 2021) (considering stimulus payments in finding plaintiff not entitled to proceed ifp).

While a balance of $825.00 appears modest at first blush it is not inconsequential considering Plaintiff does not incur expenses in prison for necessities such as sustenance, housing, and medical care. Although the Ninth Circuit Court of Appeals has held that "the filing fee . . . should not take the prisoner's last dollar," *Olivares v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995), the information provided by Plaintiff reflects that he has sufficient funds to pre-pay the $402.00 filing fee in full to commence this action and still will have adequate funds left over for any incidental personal or commissary expenses.

Should Plaintiff wish the Court to consider any additional information or should his available balance change by the time he receives these Findings and Recommendations, he may advise the Court. However, the Court has the authority to consider any reasons and circumstances for any change in Plaintiff's available assets and funds. *See Collier v. Tatum*, 722 F.2d 653, 656 (11th Cir. 1983) (stating district court may consider an unexplained decrease in an inmate's trust account, or whether an inmate's account has been depleted intentionally to avoid court costs).

Based on the foregoing, the undersigned alternatively recommends Plaintiff's IFP motion be denied because Plaintiff has sufficient funds in his inmate account. If Plaintiff wishes to proceed with this action, Plaintiff must pre-pay the $402.00 filing fee in full.

Accordingly, it is **RECOMMENDED**:

Plaintiff's IFP motion (Doc. No. 9) be denied and the case be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(g).  In the alternative, Plaintiff's IFP motion be denied and the case be dismissed, without prejudice, to Plaintiff refiling accompanied by the $402.00 filing fee because Plaintiff has sufficient funds in his inmate trust fund account to pay the filing fee.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   December 1, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11